UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 8, 2015

-----------------------------------------------------------X
JESSE SHANNON,                           :
                                         :
                    Plaintiff,           :
          -v-                            :          13 Civ. 4530 (KBF)
                                         :
D. VENETTOZZI, MICHAEL CAPRA,            :          OPINION & ORDER
PHILLIP HEATH, WILLIAM KEYSER, J.        :
WERLAU, EDWARD KASPER, V. COLON,         :
JERMAINE MCTURNER, NITOSCHA              :
MOORE, J.VELEZ, S. GREGORY, AND          :
BRIAN FISCHER,                           :
                                         :
                    Defendants.          :
----------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

Pro se plaintiff Jesse Shannon commenced this action against numerous individuals on June 29, 2013 for alleged violations of his federal constitutional rights and state law rights while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Sing Sing Correctional Facility ("Sing Sing"). (Complaint, ECF No. 2.) His claims primarily allege sexual abuse when corrections officer ("C.O.") Jermaine McTurner conducted four separate pat frisks on plaintiff in 2011, and retaliation in connection with his complaints relating thereto. Plaintiff seeks both damages and injunctive relief.

On July 11, 2014, defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 64.) The motion became fully briefed on August 29, 2014. (ECF Nos. 65, 70, 75.) On November 14, 2014, plaintiff filed what was styled as a motion to dismiss defendant's reply;

however, liberally construed, this filing is in effect a separate motion by plaintiff seeking to amend his complaint.  (ECF No. 80).

For the reasons set forth below, defendants' motion to dismiss is GRANTED, and plaintiff's motion to amend is DENIED.

I.   FACTUAL BACKGROUND

Plaintiff Jesse Shannon alleges that on four separate occasions between August 16, 2011 and November 20, 2011, C.O. McTurner sexually abused him while conducting a pat frisk.  (Compl. ¶¶ 18, 20-22, 25.)  Each of these pat frisk searches occurred when plaintiff had to use the bathroom while visiting with his wife.  (Id.)  As an example, plaintiff alleges that on August 16, 2011, C.O. McTurner sexually assaulted him in the presence of C.O. Moore for 15 seconds when he "overly searched Plaintiff in an aggressive and very provocative manner".  (Id. ¶ 18.)

Plaintiff contends that he notified area supervisors, Sergeant Kasper and Sergeant Colon, about the assault, but they failed to get involved.  (Id. ¶¶ 18, 20, 21.)  Plaintiff also filed grievances against C.O. McTurner and Sergeant Kasper in August 2011 and against other corrections staff in November 2011.  (Id. ¶¶ 19, 23, 26 n.2.)  Multiple staff members allegedly retaliated against plaintiff because he filed complaints.  (Id. ¶¶ 19, 26 n.2, 28-29.)  Plaintiff describes those instances of retaliation as follows:

On or about January, 29, 2012, C.O. Moore fabricated a misbehavior report in retaliation for plaintiff's filing a grievance complaint against C.O. McTurner;

plaintiff was held in keeplock confinement for 45 days as a result of the report.  (Id.
¶ 28, Prelim. St.)

On February 15, 2012, C.O. Gregory confiscated a magazine called "Scrilla
Guerillaz."  (Id. ¶ 29.)  The following day, C.O. Gregory told plaintiff that he would
not receive the magazine because of his grievance complaints.  (Id. ¶ 30.)  On
February 20, 2012, plaintiff filed a new grievance against C.O. Gregory and on
February 25, 2012, he filed a misdemeanor complaint with the Westchester District
Attorney's Office.  (Id. ¶ 31.)  On March 21, 2012, Lt. Werlau approached plaintiff to
inform him that he should speak with Lt. Werlau first before filing criminal charges
against corrections officers.  (Id. ¶ 32.)

On December 6, 2012, another Scrilla Guerillaz magazine arrived for
plaintiff.  Lt. Werlau subsequently "harassed, intimidated and interrogated"
plaintiff about his involvement in an interview that another inmate gave to the
magazine.  (Id. ¶ 33.)  Lt. Werlau ordered non-party K. James and C.O. Velez to
search plaintiff's cell wherein they confiscated several items including four Scrilla
Guerillaz magazines.  (Id. ¶ 37.)  Plaintiff was placed on keeplock status and
confined to his cell for failure to sufficiently answer Lt. Werlau's questions.  (Id.)
On December 8, 2012, plaintiff was served with a Tier III misbehavior report for
violating rules against unauthorized organization and lying.  (Id. ¶¶ 36, 38.)  The
report related to plaintiff's being a member of "Scrilla Guerillaz," which the prison
considered an unauthorized organization because it is a "military minded
organization".  (Id. ¶ 41.)  During the Tier III disciplinary hearing, Lt. Werlau

3

testified that plaintiff appeared in several issues of the Scrilla Guerillaz magazine without permission.  (Id. ¶ 42.)  Plaintiff's wife testified that she gave the magazine permission to use her name in the interview.  (Id. ¶ 40.)  On January 8, 2013, Deputy Keyser found plaintiff guilty of the misbehavior report and imposed a penalty of 90 days in keeplock confinement and loss of certain privileges.  (Id. ¶ 34-35.)  Plaintiff alleges that the disciplinary actions were a form of retaliation and that Deputy Keyser deliberately disregarded evidence.  (Id. ¶ 45, 48, 50.)

II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a Complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund. Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the Complaint must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  Id.

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers ..." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citations and internal quotation marks omitted). Accordingly, the Court "liberally construe[s] pleadings and briefs submitted by pro se litigants ... reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007).  However, even a pro se complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see Fuentes v. Tilles, 376 F. App'x 91, 92 (2d. Cir. 2010) (affirming district court's dismissal of pro se complaint for failure to state a claim).

III.   DISCUSSION

Liberally construed, plaintiff alleges claims under 42 U.S.C. § 1983 and New York state law for (1) sexual abuse and failure to protect (Compl. ¶ 68); (2) retaliatory actions for filing grievances (Compl. ¶¶ 28-36, 48, 71); (3) failure of due process relative to inmate disciplinary proceedings (Compl. ¶¶ 45, 49, 64, 66, 75-77); (4) being subjected to keeplock status and associated deprivation of various privileges (Compl. ¶¶ 54, 58, 60, 66, 70); and (5) violating his property rights, including the withholding and confiscation of "Scrilla Guerillaz" magazines and other personal property (Compl. ¶¶ 29, 33, 37, 62, 71, 73).[1]

For the reasons that follow, plaintiff fails to adequately plead any § 1983 or state law claim against the defendants.

---

[1] Plaintiff delineates ten causes of action, many of which overlap, but makes various allegations throughout other parts of the Complaint.  In an effort to liberally construe the Complaint, the Court accounts for all allegations in these five groups.

A.    Claims against defendants in their official capacities

Plaintiff brings claims against defendants in both their official and individual capacities.  The claims against defendants in their official capacities are dismissed on the grounds of Eleventh Amendment sovereign immunity.  The Eleventh Amendment prohibits suits against a state or its agency in federal court unless the state consents or there has been a valid abrogation of its sovereign immunity by an act of Congress.  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984).  Section 1983 does not constitute such an abrogation.  See Quern v. Jordan, 440 U.S. 332, 343 (1979); Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of § 1983 claims for damages against state, department, prison, and prison officials in their official capacities on Eleventh Amendment grounds).  Accordingly, all claims against defendants in their official capacities are dismissed.

B.    Failure to exhaust

Defendants challenge plaintiff's retaliation claim against Deputy Keyser and his claims regarding the conditions of his confinement while being held in keeplock on the grounds that plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA").  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is 'mandatory' and 'applies to all inmate suits about

6

prison life, whether they involve general circumstances or particular episodes.'"

Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Porter v. Nussle, 534

U.S. 516, 524 (2002)). Where a plaintiff's failure to exhaust his or her

administrative remedies under the PLRA appears on the face of the complaint,

dismissal is warranted at the pleading stage.  See Pani v. Empire Blue Cross Blue

Shield, 152 F.3d 67, 74 (2d Cir. 1998).

Here, plaintiff exhausted his administrative remedies with respect to the

sexual abuse allegations, but he never grieved his retaliation claim against Deputy

Keyser or the conditions of his confinement while being held in keeplock.  An

inmate claiming that a defendant conducted a disciplinary hearing because of

retaliatory motives must follow DOCCS' three-step process to exhaust

administrative remedies.  See, e.g., Scott v. Gardner, 287 F. Supp. 2d 477, 489

(S.D.N.Y. 2003).  Plaintiff admits that he did not do so here.  (Plaintiff's Opposition

Brief, ECF No. 70, at 3-5).

However, plaintiff also asserts in his response papers that he was prevented

from filing such grievances.  (Id.)  He alleges that he "made several attempts" to file

grievances against Deputy Keyser for his "bias and retaliatory actions" and

grievances for the "conditions he endured while held in keep-lock confinement and

the deprivation of various privileges" but that IGRC Supervisor Anthony Black

refused to log the grievances.  (Id. at 3.)  Plaintiff then forwarded the grievances to

the Director of Inmate Grievance Program.  (Id.)[2]

---

[2] Plaintiff submits letters from Karen Bellamy, the Director of Inmate Grievance Program, returning the grievances. (Pl. Opp., Ex. 1, 2.)

As defendant admits, plaintiff has raised issues of fact as to exhaustion that cannot be resolved in a motion to dismiss under 12(b)(6).  (Defendants' Reply Brief, ECF No. 75, at 4).  The Court accordingly does not dismiss these claims on exhaustion grounds.

    C.   <u>Sexual Abuse and Failure to Protect</u>

The first set of claims relate to sexual abuse plaintiff alleges he suffered at the hands of C.O. McTurner.  The Second Circuit has recognized that allegations of sexual abuse by corrections officers may be cognizable as Eighth Amendment claims.  <u>See</u> <u>Boddie v. Schneider</u>, 105 F.3d 857, 861 (2d Cir. 1997).  In order for a prisoner to allege a violation of the Eighth Amendment, he or she must allege that (1) the punishment to which he was subjected was "objectively, sufficiently serious"; and (2) the prison official involved had "a sufficiently culpable state of mind."  <u>Id.</u> (citations and internal quotation marks omitted).  However, the <u>Boddie</u> court held in that case that the "isolated episodes of harassment and touching alleged," though "despicable and, if true, they may potentially be the basis of state tort actions . . . do not involve a harm of federal constitutional proportions as defined by the Supreme Court."  <u>Id</u>. at 860-61 (alleging corrections officer touched plaintiff's penis, forcibly pressed her breasts against his chest, and harassed him verbally).

Plaintiff alleges that C.O. McTurner sexually abused him during four searches by touching, fondling and/or grabbing his nipple area, genitals, and buttocks.  (Compl. ¶¶ 18, 20, 21, 22, 25).  One of the incidents lasted 15 seconds.  (<u>Id</u>. ¶ 18.)  These allegations do not rise to the level of what has been recognized as

Eight Amendment violations.  See, e.g., Crawford v. Cuomo, No. 9:13–CV–406 (NAM/CFH), 2014 WL 897046 (N.D.N.Y. Mar. 6, 2014) (dismissing plaintiff's Eight Amendment claim where the corrections officer allegedly squeezed the inmate's penis, grabbed his crotch, and rubbed his hands on the inmate's chest); Irvis v. Seally, 2010 WL 5759149, *1, *4 (N.D.N.Y. Sept. 2, 2010), report and rec. adopted 2011 WL 454792 (N.D.N.Y. Feb. 4, 2011) (dismissing plaintiff's Eighth Amendment claim alleging three instances of sexual touching during strip searches); Garcia v. Watts, No. 08 Civ. 7778 (JSR), 2009 WL 2777085 (S.D.N.Y. Sept. 1, 2009) (dismissing plaintiff's Eight Amendment claim alleging continuous harassment extending over one year, including incidents of grabbing prisoner's buttocks and rubbing his penis against prisoner's buttocks); Montero v. Crusie, 153 F. Supp. 2d 368, 372–373 (S.D.N.Y. 2001) (granting summary judgment because a corrections officer who "threw kisses" at plaintiff, "squeezed plaintiff's genitalia" on several occasions, and spread rumors about plaintiff's sexuality did not violate the Eight Amendment).

Plaintiff asserts two additional arguments.  First, plaintiff claims that the prison policy requiring pat frisks violates the Eight Amendment.  (Pl. Opp at 24.)  It is well-settled that "conducting pat frisks on prisoners is a necessary procedure to ensure safety and security of prisons . . ." Tavares v. City of New York, No. 08 Civ. 3782 (PAE), 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011).  Second, plaintiff claims that Superintendent Heath, Superintendent Capra, Deputy Keyser, Sergeant Kasper, Sergeant Colon, C.O. McTurner and C.O. Moore violated his

rights by failing to protect him from sexual abuse.  Those claims are rendered moot in lights of this Court's dismissal of the underlying sexual abuse claim as discussed above.  See Shaw v. Prindle, No. 12–CV–1281 (FJS/CFH), 2013 WL 9769725, at *4 (N.D.N.Y. Dec. 4, 2013), adopted in relevant part, 2014 WL 4988233 (N.D.N.Y. Oct. 7, 2014) ("[S]ince Shaw's sexual abuse claim against Prindle cannot survive defendants' motion, Shaw's failure to protect claims against Larkin and Russo are rendered moot."); Seeley v. Boehlert, No. 6:10–CV–6570 (MAT), 2013 WL 4780908, at *9 (W.D.N.Y. Sept. 5, 2013) ("Saj cannot be liable for failure to protect Plaintiff where the underlying incident of sexual misconduct is not actionable under the Eighth Amendment."); Hilson v. Maltese, No. 09–CV–1373 (NAM/ATB), 2012 WL 6965105, at *29 (N.D.N.Y. Dec. 14, 2012) ("Because of this court's conclusion that no Eighth Amendment violation occurred, this court need not address plaintiff's claim that certain defendants failed to intervene to protect him from such purported violations . . . ").

Accordingly, plaintiff's sexual abuse and failure to protect claims under § 1983 are dismissed.

### D.   Retaliation

Plaintiff next alleges a First Amendment retaliation claim against multiple defendants for their actions in response to the grievances he filed or attempted to file concerning the alleged sexual abuse by C.O. McTurner.

In order to state a § 1983 claim for First Amendment retaliation, a prisoner must allege "(1) that the speech or conduct at issue was protected, (2) that the

defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." See Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks and citation omitted). The Second Circuit has warned that "because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." Smith v. Levine, 510 Fed. Appx. 17, 20 (2d Cir. 2013) (quoting Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003)).

### 1.   Retaliation claim against C.O. Moore

Plaintiff alleges that C.O. Moore fabricated a misbehavior report on January 29, 2012 because plaintiff had filed a grievance against her co-worker C.O. McTurner. (Compl. ¶ 28.) The filing of lawsuits and administrative grievances is constitutionally protected activity, and fabricating reports is adverse action for retaliation purposes. See Davis v. Goord, 320 F.3d 346, 352–53 (2d Cir. 2003). But to make a plausible retaliation claim, plaintiff must assert facts supporting an inference that his filing a grievance report was "a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). Several factors may be considered in determining whether a causal connection exists between plaintiff's protected activity of filing a grievance and C.O. Moore's report, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the

11

defendant concerning his or her motivation.  Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995).

Plaintiff's conclusory allegations here fail to satisfy the nexus requirement between the misbehavior report and the grievance filing.  Plaintiff does satisfy the temporal proximity factor.  Although C.O. Moore wrote the misbehavior report two months after the plaintiff filed his grievance, (Compl. ¶ 28), the Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection.  Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009).  However, plaintiff makes no allegation about a good disciplinary record.  He was ultimately found guilty of the misbehavior report authored by C.O. Moore.  The complaint also lacks allegations that C.O. Moore was aware of the grievance against C.O. McTurner or made any statement regarding her motivation.  Plaintiff seems only to allege that C.O. Moore's motivation for retaliation was based on C.O. McTurner being a co-worker; this is insufficient.  See Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when the only alleged basis for retaliation was a complaint about a prior incident by another corrections officer).  Plaintiff has not alleged facts which make it plausible that the adverse action he suffered was a result of his engaging in protected activity.

### 2.     Retaliation claim against C.O. Gregory

Plaintiff alleges that C.O. Gregory retaliated against him for filing grievances against other corrections officers by confiscating plaintiff's "Scrilla Guerillaz"

magazine on February 15, 2012.  (Compl. ¶ 29.)  Unlike with C.O. Moore, plaintiff is able to connect his protected activity – filing the grievances – with C.O. Gregory's action.  While C.O. Gregory confiscated the magazine approximately three months following the grievance, periods of up to six months have been found not too attenuated.  See Espinal, 558 F.3d at 129 (passage of six months supported a causal connection).  Plaintiff also claims that when he confronted C.O. Gregory the following day, C.O. Gregory told him "that he was not getting his magazine because he liked writing grievances against correction officers."  (Compl. ¶ 30.)  This assertion provides some plausible basis to connect the confiscation to plaintiff's grievance.

However, plaintiff fails to meet the second prong of "adverse action" described in Espinal, 558 F.3d at 128.  Plaintiff alleges that C.O. Gregory confiscated the magazine on a single occasion.  The law is clear that under most circumstances, including those here, a single instance of confiscation does not constitute an adverse action for the purposes of a retaliation claim.  "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  Davis, 320 F.3d at 353 (internal quotation marks omitted) (quoting Dawes, 239 F.3d at 493).  "Otherwise, the retaliatory act is simple de minimis and therefore outside the ambit of constitutional protection."  Id.; see also Green v. Niles, No. 11 Civ. 1349 (PAE), 2012 WL 987473, at *4-5 (S.D.N.Y. Mar. 23 2012) (no adverse action where officials allegedly withheld two pieces of mail from a prisoner sending monetary

13

checks to his family); <u>Roseboro v. Gillespie</u>, 791 F. Supp. 2d 353, 374 (S.D.N.Y. 2011) (no adverse action where defendant temporarily withheld a letter from plaintiff's wife).  Plaintiff was not deterred by this confiscation from exercising his First Amendment rights – he alleges that he responded to C.O. Gregory confiscating the magazine by filing a complaint ten days later.  In addition, courts in this district have found that destruction of personal property is often an adverse action, but minor cases of withholding property are typically <u>de minimis</u>.  As confiscating one magazine would not deter a similarly situated individual from filing grievances and is a <u>de minimis</u> action, any retaliation claim against C.O. Gregory must be dismissed.

        3.    <u>Retaliation claim against Deputy Keyser</u>

Plaintiff next makes a retaliation claim against Deputy Keyser who, at a Tier III disciplinary hearing, imposed a penalty of 90 days in keeplock confinement based on "the trumped up charges which was made in retaliation for Plaintiff's write ups of guards." (Compl. ¶ 34-35, 48.)  The allegations against Deputy Keyser fail for the same reasons they fail against C.O. Moore: plaintiff fails to plead a causal connection between Deputy Keyser's actions and plaintiff's filing grievances. Plaintiff cannot meet the <u>Colon</u> factors.  See <u>Colon</u>, 58 F.3d at 872-73.

As an initial matter, there is a nine month gap between plaintiff filing grievances and Deputy Keyser administering the disciplinary hearing.  In addition, plaintiff makes no allegation about a good disciplinary record, and he ultimately lost the disciplinary hearing.  Finally, the Complaint offers a conclusory statement

that Deputy Keyser "abused his disciplinary powers by rendering a determination of guilt that was not based upon substantial evidence" (Compl. ¶ 35), but fails to allege any fact or statement indicating that Deputy Keyser was motivated to retaliate against him. Without such facts, the retaliation claim against Deputy Keyser is implausible and must be dismissed.

### 4.   Retaliation claim against Lt. Werlau

Liberally construed, plaintiff makes a final retaliation allegation against Lt. Werlau for telling plaintiff on March 21, 2012 not to file further criminal complaints against other officers. (Compl. ¶ 32.) Plaintiff also alleges that Lt. Werlau retaliated against him in December 2012 by ordering his cell to be searched. (Compl. ¶¶ 36, 71.)[3] As with the claims against C.O. Moore and Deputy Keyser, plaintiff fails to assert facts that connect Lt. Werlau's actions with plaintiff's grievance filings. Plaintiff's conclusory allegations are insufficient given the lack of facts suggesting that Lt. Werlau made statements or gave any indication that he sought retaliation for plaintiff's complaints against other staff members.[4]

In light of the requirement for "non-conclusory allegations," Smith, 510 Fed. Appx. at 20, each of plaintiff's retaliation claims fail.

---

[3] In his opposition brief, plaintiff for the first time alleges that C. O. Velez made statements such as "that's' [sic] what happens to assholes when they write up officers" when, on Lt. Werlau's orders, he searched plaintiff's cell and confiscated property. (Pl. Opp. at 27-28.) The Complaint makes no retaliation claim against C.O. Velez and only states that he was directed by Lt. Werlau to search the cell. (Compl. ¶ 37.) It is improper to raise new allegations that should have been in the Complaint. See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998). Furthermore, the alleged retaliatory act by C.O. Velez occurred nine months after plaintiff filed his last grievance.

[4] In addition, while the Second Circuit has not addressed whether a cell search can constitute an adverse action for purposes of a First Amendment retaliation claim, many district courts in this circuit have concluded that a cell search cannot support such a claim. See Mateo v. Alexander, No. 10 Civ. 8427 (LAP), 2012 WL 864805, at *4 (S.D.N.Y. Mar. 14, 2012); Salahuddin v. Mead, No. 95 Civ. 8581 (MBM), 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) (collecting cases); Battice v. Phillip, No. CV–04–669 (FB) (LB), 2006 WL 2190565, at *7 (E.D.N.Y. Aug. 2, 2006) (collecting cases).

E.      Due Process in Inmate Proceedings

Plaintiff claims that there was a failure of due process relative to inmate disciplinary proceedings when Deputy Keyser found him guilty based on an allegedly false misbehavior report from December 8, 2012 accusing plaintiff of lying and of being a member of Scrilla Guerillaz, an unauthorized organization.  (Compl. ¶¶ 45, 49, 64, 66, 75-77.)  "[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  Boddie, 105 F.3d at 862.  To assess an allegation that an inmate has been found guilty of false charges, the Court must determine whether the prison has "provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment."  Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988).  Those protections are: "(1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action." Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986) (citing Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974)).  "[J]udicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'"  Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (quoting Superintendent v. Hill, 472 U.S. 445, 455 (1985)).  That standard is "extremely tolerant," id., and is satisfied if there is some "reliable evidence" to support the disciplinary ruling, Luna v. Pico, 356 F.3d 481, 488 (2d Cir. 2004).

16

Here, plaintiff was afforded the three <u>Freeman</u> protections an inmate can expect at a disciplinary hearing.  <u>See</u> <u>Freeman</u>, 808 F.2d at 953.  (1) Plaintiff admits that he received advanced written notice of the charges on December 8, 2012, which was well over 24 hours before the hearing began on December 12, 2012.  (Compl. ¶ 38.)  (2) Plaintiff had the opportunity to argue at the hearing, call his wife and son as witnesses, and present rebuttal evidence about "Scrilla Guerillaz."  (<u>Id</u>. ¶¶ 40-41, 47.)   In fact, Deputy Keyser adjourned the hearing until December 20, 2012 to allow plaintiff to call his wife and son as witnesses.  (<u>Id</u>. ¶ 39.)[5]  (3) Deputy Keyser provided a written statement that included sections regarding evidence relied on and reasons for disposition. (Ex. 5, ECF No. 70.)  In addition, plaintiff's claim rests on his conclusory charge that Deputy Keyser's finding of guilt was tainted with bias. (Compl. ¶¶ 48, 50, 51.)  Indeed "some evidence" supports Deputy Keyser's decision to discipline plaintiff, as Deputy Keyser's report notes that the article in "Scrilla Guerillaz" stated plaintiff was the interviewer and there were letters in plaintiff's cell telling him to inform the other inmate that he owed $50 for publishing the article.  (Ex. 5, ECF No. 70.)

---

[5] Plaintiff also alleges that Defendants violated their own rules by failing to complete the disciplinary hearing in fourteen days.  (Compl. ¶ 64.)  But plaintiff admits that the hearing was adjourned because he wanted to call witnesses.  There cannot be a due process violation when plaintiff requested the adjournment of the hearing.  <u>See, e.g.</u>, <u>Black v. Selsky</u>, 15 F. Supp. 2d 311, 317 (W.D.N.Y. 1998) (dismissing plaintiff's due process claim for commencing the hearing fifteen days after the misbehavior report in part because plaintiff requested time to procure witnesses).

F.   Keeplock Confinement and Loss of Privileges

Plaintiff alleges that his time in keeplock confinement[6] violated the First,

Fifth, and Fourteenth Amendments.  (Compl. ¶¶ 56, 58, 60, 66.)[7]  In his opposition

brief, plaintiff limits his explanation for why his confinement was unconstitutional

to one sentence: "Here, Plaintiff's confinement was motivated purely by the

retaliation of the defendants."  (Opp. Brief at 19.)  The Court rejects the retaliation

claims, as discussed supra.  The Court nonetheless reads pro se plaintiff's language

about the confinement liberally as expressing a more general due process violation.[8]

In order to state a due process claim, plaintiff must allege that he has a

protected liberty interest and that he was deprived of sufficient process to protect

that interest.  See Sandin v. Conner, 515 U.S. 472, 484 (1995).  A prisoner's liberty

interest is implicated by prison discipline, such as keeplock confinement, only if the

discipline "imposes [an] atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life."  Id.  Factors relevant to determining

whether the plaintiff endured an "atypical and significant hardship" include "the

extent to which the conditions of the disciplinary segregation differ from other

routine prison conditions" and "the duration of the disciplinary segregation imposed

---

[6] While Plaintiff alleges being sentenced to 90 days in keeplock confinement, he avers that he was only held in keeplock from December 7, 2012 to January 8, 2013.  (Compl. ¶¶ 35, 54, 58.)

[7] To the extent that plaintiff intended to also challenge his 45 days of keeplock confinement following the January 29, 2012 misbehavior report (Compl. at Prelim. St., ¶ 28), the Court dismisses the claim because plaintiff has made no allegation that the confinement constituted atypical or significant hardship.

[8] Plaintiff does not make an Eight Amendment claim; however, the Court notes the absence of facts to suggest plaintiff was subject to anything but normal confinement conditions.  See Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (confinement violates the Eight Amendment if (1) the deprivation denied him "the minimal civilized measures of life's necessities," and (2) the defendants effectuated the deprivation with either a "sufficiently culpable state of mind" or with "deliberate indifference").

compared to discretionary confinement." <u>Wright v. Coughlin</u>, 132 F.3d 133, 136 (2d Cir. 1998).

The issue here is whether plaintiff's 32 days of keeplock confinement amounts to "atypical and significant hardship." Plaintiff fails to assert any fact that supports that standard. The loss of privileges, discussed <u>infra</u>, is not atypical for a prisoner kept in keeplock confinement. In addition, thirty-two days in keeplock confinement is not an atypical hardship when compared to the "ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 482. While the Second Circuit has not established a bright-line rule as to how lengthy a term of disciplinary can be, confinement "for a period of up to 101 days, generally do[es] not constitute 'atypical' conditions of confinement." <u>Bunting v. Nagy</u>, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (citing <u>Sealey v. Giltner</u>, 197 F.3d 578, 589 (2d Cir. 1999); <u>Palmer v. Richards</u>, 364 F.3d 60, 65 (2d Cir. 2004)). Furthermore, plaintiff fails to allege that Superintendent Capra, Sergeant Kasper, Sergeant Colon, C.O. McTurner or C.O. Moore were involved in any deprivation of his liberty interest. <u>See</u> <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, <u>inter alia</u>, the defendant's personal involvement in the alleged constitutional deprivation.") Accordingly, plaintiff's claims against all defendants should be dismissed.

1.    Loss of privileges

Plaintiff alleges that during his 32 days in keeplock confinement, he was: (i) restricted to his cell for twenty-three hours per day; (ii) denied access to religious services; (iii) provided only restricted quantities of food, which was cold; (iv) denied access to commissary, phone and packages; (v) denied access to movies, television and video; (vi) denied access to vocational and educational programs; (vii) denied access to the Family Reunion Program; (viii) denied physical access to the law library and granted only limited access to the materials therein; (ix) denied access to employment denied access to his personal belongings, including books; (x) denied access to special events, privileges and programs available to the general population; (xi) subjected to illnesses such as mental anguish, stress and headaches; (xii) denied access to commissary; (xiii) denied package deliveries; and (xiv) denied conjugal visits.  (Compl. ¶¶ 54, 70.)  These claims are virtually identical to claims plaintiff made when challenging a previous twenty-month stint in keeplock confinement.  Shannon v. Selsky, No. 04 Civ. 1939, 2005 WL 578943, at *2 (S.D.N.Y. Mar. 10, 2005) (dismissing Shannon's § 1983 claims).  As in the previous case, it is impossible to discern from the Complaint whether plaintiff is contending that the normal incidents of keeplock confinement are unconstitutional or if the particular conditions of plaintiff's confinement differed from normal confinement in some unconstitutional respect.  Under either interpretation, plaintiff's claims must be dismissed.

20

To the extent plaintiff is alleging that normal conditions of keeplock confinement are unconstitutional, his claim fails; courts in this circuit have consistently held to the contrary.  See, e.g., Palmer v. Richards, 364 F.3d 60, 65 n.3 (2d Cir. 2004) (finding that a prisoner held in solitary confinement for 23 hours a day and denied various privileges available to general population prisoners, such as the opportunity to work, is normal in prison); Sealey v. Giltner, 197 F.3d 578, 581 (2d Cir. 1999) (valid conditions for confinement include situations where the "inmate is confined to his cell 23 hours per day, can take no more than three showers per week, has limited library privileges and no telephone privileges"); Nji v. Heath, No. 13 Civ. 200 (CM), 2013 WL 6250298 at *11 (S.D.N.Y. Dec. 2, 2013) (dismissing due process claim where the inmate was held in keeplock confinement for 32 days and lost his ability to attend religious services); Branch v. Goord, No. 05 Civ. 6495, 2006 WL 2807168, at *3-5 (S.D.N.Y. Sept. 28, 2006) (finding the inmate's 45-day sentence in keeplock confinement with a loss of privileges did not violate the Eighth or Fourteenth Amendment) (citing cases); Dixon v. Goord, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002) (holding that the inmate being "cut off from the prison population, a computer program, religious services, legal research, medical showers and personal property, as well as limits on food access, and other normal incidents of SHU confinement, are not violations of the Eighth Amendment.")

If, on the other hand, plaintiff is claiming that the particular conditions to which he was subjected were unconstitutional as compared to normal confinement, his claims are dismissed for failing to allege facts that support that conclusion and

for failing to allege that any of the defendants were personally involved in creating those conditions.  See Grullon, 720 F.3d at 138.  Any of the defendants' general supervisory roles in the confinement are insufficient to create supervisor liability for a § 1983 claim without allegations of specific conduct rendering the conditions unconstitutionally deviant from normal conditions.  See Colon, 58 F.3d at 873.

       2.   Conspiracy

Plaintiff makes several allegations of conspiracy, primarily that combinations of defendants conspired to have plaintiff held in keeplock confinement and deprive him of privileges afforded to other inmates.  (Compl. ¶¶ 58, 60, 62, 64, 66.)  Plaintiff also alleges that several defendants acted in concert to have him subject to sexual abuse.  (Id. ¶ 68.)  To establish a claim for conspiracy under § 1983, plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  Plaintiff's conspiracy claims fail because there was no unconstitutional injury for his keeplock confinement or for sexual abuse, as discussed supra.  In addition, plaintiff fails to allege any fact that shows an agreement between defendants to deprive plaintiff of his constitutional rights.

    G.   Property Violations

Plaintiff alleges a violation of due process and equal protection when Lt. Werlau ordered C.O. Velez on December 7, 2012 to confiscate his property. (Compl. ¶¶ 37, 39, 44, 71, 73.)  Liberally construed, plaintiff also makes due process

22

and First Amendment claims against C.O. Gregory and Lt. Werlau for failing to deliver "Scrilla Guerillaz" magazines that arrived at the prison.  (Id. ¶¶ 29, 33.)

      1.     <u>Due Process</u>

The deprivation of property alleged by plaintiff will not support a due process claim under § 1983 if "adequate state post-deprivation remedies are available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).  The Second Circuit has held that the availability of an action in the New York Court of Claims constitutes such a remedy. See Davis v. New York, 311 Fed. Appx. 397 (2d Cir. 2009); Love v. Coughlin, 714 F.2d 207, 209 (2d Cir. 2009).  Plaintiff's claims regarding deprivation of property are accordingly dismissed as plaintiff does not allege that he is unable to file such an action in the New York Court of Claims.

      2.     <u>Equal Protection</u>

Plaintiff's equal protection claim amounts to an assertion that other inmates were allowed to possess the Scrilla Guerillaz magazine while he was not.  (Compl. ¶ 62.)  Plaintiff, however, fails to allege that these other inmates were similarly situated to him as they did not give an interview or appear in the magazine.

      3.     <u>First Amendment</u>

Liberally construed, plaintiff asserts a First Amendment challenge to C.O. Gregory and Lt. Werlau for each once failing to deliver to plaintiff his "Scrilla Guerillaz" magazine.  (Id. ¶¶ 29, 33.)  Interference with non-legal mail, such as the magazine, "is more readily justifiable than interference with so-called legal mail." Ahlers v. Rabinowitz, 684 F.3d 53, 64 (2d Cir. 2012).  In Ahlers, the Second Circuit

declined to articulate a precise standard for this scenario because the plaintiff's
complaint in that case "cannot support a claim that any alleged 'interference' with
his non-legal mail was 'regular[]' or 'unjustifiabl[e].'"  Id. (citing Davis, 320 F.3d at
351); see also Cancel v. Goord, No. 00 Civ. 2042, 2001 WL 303713, at * 6 (S.D.N.Y.
Mar. 29, 2001) (plaintiff must demonstrate "a pattern and practice of interference
that is not justified by any legitimate penological concern.").  The Second Circuit
affirmed the dismissal of plaintiff's First Amendment claim involving eleven
instances of interference with non-legal mail, including three instances of mail that
was never returned.  Id. at 64-65.  Here, plaintiff only alleges two instances where
he did not receive the magazines.  His claim fails because he does not properly
allege that any defendant engaged in a "regular" or "unjustifiable" practice of
withholding his mail.  See id.

     H.    State Law Claims

     Plaintiff's complaint alleges various violations of state statutory, regulatory
and constitutional law.  Defendants argue that plaintiff's state law claims must be
dismissed for lack of subject matter jurisdiction.  In addressing supplemental
jurisdiction, a federal court looks to the substantive law of the state.  See United
Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  New York Correction Law § 24
requires any state claim against a current or former DOCCS employee relating to
actions taken during their employment be brought against the State of New York in
the New York Court of Claims.  See Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996)
(Correction Law § 24 "precludes the assertion of claims against corrections officers

in any court, including the federal courts . . . because a federal court acts essentially as a state court in addressing pendent state law claims.").  Plaintiff points to Haywood v. Drown, 556 U.S. 729 (2009) as holding that Correction Law § 24 violates the Supremacy Clause.  The Supreme Court's decision, however, did not affect the district court's lack of jurisdiction to hear state law claims against DOCCS officials, but instead held that state courts must be open to § 1983 federal claims.  Haywood, 556 U.S. at 2115; see also Parris v. NYS Dep't Corr. Servs., 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013); Blanche v. Pierelli, 08 Civ. 4751 (RJH), 2009 WL 2499737, at *8 (S.D.N.Y. Aug. 7, 2009).  All defendants were employed by DOCCS during the relevant period.  Therefore, under New York law, it is proper to dismiss plaintiff's state claims for lack of subject matter jurisdiction.

IV.    PLAINTIFF'S MOTION TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be freely granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "However, it is well established that leave to amend a complaint need not be granted when amendment would be futile."  Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003).  Futility turns on whether an amended pleading could withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

Plaintiff asked to amend his complaint months after this motion practice was fully briefed, but he failed to assert how an Amended Complaint could salvage any

of his claims.  (ECF No. 80.)  Thus, amendment of the complaint would be futile and plaintiff's motion to amend the complaint is denied.

V.     CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to close the motion at ECF No. 64, and to terminate this action.


SO ORDERED.

Dated:        New York, New York
              January 8, 2015

_____
              KATHERINE B. FORREST
              United States District Judge

CC:
Jesse Shannon, 89T1248
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562